## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

YU-CHING CHANG,                                    )
13F, No. 52, Fuxing 6th Road,                      )
Zhubei City, Hsinchu County,                       )
Taiwan, Republic of China;                         )
                                                   )
SARAH HSIN CHENG,                                  )          Civil Action No. 18-659
201-2071, West 42nd Avenue,                        )
Vancouver, BC Canada V6M 2B4;                      )
                                                   )
SHIH-TING FANG,                                    )
4F, No. 28, Alley 80, Lane 39, Section 1,          )
Shihpai Road, Beitou District, Tapei City 112,     )
Taiwan, Republic of China;                         )
                                                   )
TZU-YIN LIN,                                       )
12F, No. 404, Section 4, Ren'ai Road,              )
Da'an District, Taipei City 106,                   )
Taiwan, Republic of China;                         )
                                                   )
YUNG-CHING LIN,                                    )
No. 157, Meishu, 1st Street, Gushan District,    )
Kaohsiung City, Taiwan, Republic of China;         )
                                                   )
YU-SHUN LIN,                                       )
209 East 14th Street, Apartment 104,             )
New York, NY  10003;                               )
                                                   )
CHI-YU LIU,                                        )
607 E. 2nd Street, Apartment 1,                    )
Bloomington, IN 47401;                             )
                                                   )
TUO-JUNG TSENG,                                    )
#401, Unit 1, No. 3 Yard,                          )
Yaojiayuandongli, Chaoyang District,               )
Beijing, Republic of China;                        )
                                                   )
YU-CHI WU,                                         )
No. 233, Section 2, Jhongshan Road,                )
Gueiren District,                                  )
Taiwan, Republic of China;                         )
                                                   )
            and                                    )
                                                   )
WEN-GUH YANG,                                      )
No. 123, Section 2, Changchun Road,                )
Jhudong Township, Hsinchu County, 30147,           )

Taiwan, Republic of China.                              )
                                                        )
                        Plaintiffs,                     )
                                                        )
            v.                                          )
                                                        )
U.S. DEPARTMENT OF HOMELAND                             )
SECURITY,                                               )
245 Murray Lane, S.W. Building 410,                     )
Washington, D.C. 20258;                                 )
                                                        )
KIRSTJEN NIELSEN, Secretary,                            )
U.S. Department of Homeland Security, in her            )
official capacity as well as her successors and         )
assigns,                                                )
245 Murray Lane, S.W. Building 410,                     )
Washington, D.C. 20258-0075;                            )
                                                        )
U.S. CITIZENSHIP AND IMMIGRATION                        )
SERVICES,                                               )
111 Massachusetts Avenue, N.W.                          )
Washington, D.C. 20529-2000;                            )
                                                        )
L. FRANCIS CISSNA, Director,                            )
U.S. Citizenship and Immigration Services,              )
in his official capacity as well as his                 )
successors and assigns,                                 )
20 Massachusetts Avenue, N.W.                           )
Washington, D.C. 20529-2000;                            )
                                                        )
            and                                         )
                                                        )
NICHOLAS COLUCCI, Chief,                                )
Immigrant Investor Program,                             )
in his official capacity as well as his                 )
successors and assigns,                                 )
131 M Street, N.E. MS 2235,                             )
Washington, D.C. 20529-2090;                            )
                                                        )
                        Defendants.                     )

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs, by and through undersigned counsel, allege as follows:

## I.  INTRODUCTION

1.      This is a civil action under the Administrative Procedure Act ("APA"), 5 U.S.C.
§ 701, *et seq.*, for judicial review of final agency decisions that plaintiffs have failed to
establish eligibility for classification under Section 203(b)(5) of the Immigration and
Nationality Act ("INA") through a preponderance of the evidence.

2.      INA § 203(b)(5), otherwise known as the EB-5 Immigrant Investor Program,
provides classification to qualified immigrants seeking to enter the United States for the
purpose of engaging in a new commercial enterprise (including a limited partnership) where
they invest a qualifying amount, either $1,000,000 or $500,000 in an underserved area, and
create at least ten jobs for U.S. workers.  8 U.S.C. § 1153(b)(5).

3.      Between April 2014 and August 2016, each petitioner filed a Form I-526
Petition to establish eligibility under INA Section 203(b)(5) and invested $500,000 into a real
estate development project to build a residential senior living facility in St. Augustine, Florida,
which is a project of NFTC, LP, a Virginia limited liability partnership.

4.      NFTC, LP was formed to participate in, and fund the acquisition, construction,
ownership, organization, and management of, a 180 unit senior living facility comprising 100
independent living units, 60 assisting living units, and 20 care units as a sister facility to the
award-winning Towne Club Peachtree City in Georgia.  *See www.towneclubpeachtreecity.com*.

5.       Total project costs for the Towne Club-St. Augustine are expected to be
approximately $31.3 million, which will be financed by EB-5 investor equity, developer

equity, bond sale proceeds, and sale proceeds.  An economic model predicts that the Towne Club – St. Augustine would create approximately 264 full-time jobs.

6.      On October 5, 2017, twelve investors (ten of whom are joined as plaintiffs in this suit) filed a mandamus complaint in this district to compel agency adjudication under the Administrative Procedure Act and the Mandamus Act based on unreasonable delays in the adjudications, which had exceeded the average processing time of sixteen months.  *See Yu-Ching Chang*, *et al. v. DHS*, *et al.*, Case no. 17-2077-TSC, ECF 1, Mandamus Compl. (D.D.C. Oct. 5, 2017).  The delays had exceeded three years, as the first investor filed a Form I-526 Petition in February 2014, and all but one of the other eleven plaintiffs had filed petitions before July 2015.  *Id.* ¶ 6.

7.      On February 3, 2018, defendants issued final decisions for each of the twelve investors denying their Form I-526 Petitions.  On February 16, 2018, the parties consented to the voluntary dismissal of the mandamus complaint.  *See Yu-Ching Chang*, Case no. 17-2077-TSC at ECF 7, Order of Dismissal.

8.      In the February 3, 2018 final decisions, defendants determined that each investor had not made a qualifying contribution of the minimum required amount of capital pursuant to INA § 203(b)(5) and 8 C.F.R. §§ 204.6(e) and 204.6(j)(2).  Defendants found that a call option reflected in the Partnership Agreement and the offering documents demonstrated the existence of an impermissible debt arrangement where the $500,000 individual investments could not be said to be "at risk" for the purposes of generating a return on the investment.  The call option provided the general partner an option to redeem the investor's (the limited partners) Class A shares contingent on approval of their Form I-829 petition to remove conditions or on the fifth anniversary of the limited partners' investment.

9.      In March 2017 and February 2018 in functionally identical cases, two courts in

4

this district have held that defendants acted in an arbitrary and capricious manner when it denied several Form I-526 petitions where the general partner, and not the investors, possessed a call option based on those courts' interpretations of the statute and implementing regulations on what constitutes a qualifying investment. *See Doe v. USCIS*, 239 F. Supp. 3d 297 (D.D.C. 2017) (Kollar-Kotelly, J.); *Chiayu Chang v. USCIS*, 2018 U.S.C. Dist. LEXIS 19912, Case No. 16-1740 (D.D.C. Feb. 7, 2018) (Bates, J.).

10.     Similar to *Doe* and *Chiayu Chang*, defendants' decisions to deny plaintiffs' petitions are arbitrary and capricious, not supported by substantial evidence, and beyond the scope of defendants' statutory authority.  Defendants misapplied the facts and the law as to plaintiffs' eligibility for immigrant investor classification by, *inter alia*:

a.     erroneously finding that the record demonstrated the existence of a prohibited debt arrangement between the new commercial enterprise and plaintiffs;

b.     erroneously finding that plaintiffs had failed to establishing a qualifying contribution of the minimum required amount of capital; and

c.     erroneously concluding that plaintiffs had failed to establish eligibility for the benefit sought under INA § 203(b)(5), 8 C.F.R. § 204.6, and the four precedent decisions by a preponderance of the evidence.

## II.     JURISDICTION AND VENUE

11.     This civil action arises under the Constitution and the laws of the United States. The Court has subject-matter jurisdiction over this civil action pursuant to 5 U.S.C. § 702, 28 U.S.C. §§ 1331, 1361 and 2201-22.  Because defendants' decision on a petition for an EB-5 visa is not discretionary, neither the immigration laws nor the APA withdraws jurisdiction.

12.     Defendants, agencies of the United States and their officers acting within their official capacities, are subject to personal jurisdiction within the District of Columbia for

purposes of the Constitution's Due Process Clause and the District of Columbia's long-arm statute.

13.     Venue lies in this judicial district under 28 U.S.C. § 1391 because defendants are agencies and officers of agencies of the United States who reside in this judicial district.

### III.     PARTIES

A.     <u>Plaintiffs</u>

14.     Plaintiff Yu-Ching Chang, a citizen of and resident of Taiwan in the Republic of China, transferred approximately $500,000 into the NFTC, LP Escrow Account on or about July 15, 2015.  Investor Chang thereafter filed a Form I-526, Immigrant Petition by Alien Entrepreneur, which has a Priority Date of July 28, 2015.  (No. WAC 15-904-95662).  USCIS issued a Notice of Intent to Deny (NOID) on December 2, 2017, and Investor Chang responded with a submission on January 3, 2018.  On February 3, 2018, defendants issued a final decision denying Investor Chang's Form I-526 Petition.

15.     Plaintiff Sarah Hsin Cheng, a citizen of and resident of Taiwan in the Republic of China, transferred approximately $500,000 into the NFTC, LP Escrow Account on or about July 16, 2016.  Investor Cheng thereafter filed a Form I-526, Immigrant Petition by Alien Entrepreneur, which has a Priority Date of August 23, 2016.  (No. WAC 16-905-93491). USCIS issued a NOID on December 2, 2017, and Investor Cheng responded with a submission on January 3, 2018.  On February 3, 2018, defendants issued a final decision denying Investor Cheng's Form I-526 Petition.

16.     Plaintiff Shih-Ting Fang, a citizen of and resident of Taiwan in the Republic of China, transferred approximately $500,000 into the NFTC, LP Escrow Account on or about September 23, 2014.  Investor Fang thereafter filed a Form I-526, Immigrant Petition by Alien Entrepreneur, which has a Priority Date of November 14, 2014.  (No. WAC 15-900-57283).

USCIS issued a NOID on December 2, 2017, and Investor Fang responded with a submission on January 5, 2018.  On February 3, 2018, defendants issued a final decision denying Investor Fang's Form I-526 Petition.

17.     Plaintiff Tzu-Yin Lin, a citizen of and resident of Taiwan in the Republic of China, transferred approximately $500,000 into the NFTC, LP Escrow Account on or about December 5, 2014.  Investor Tzu-Yin Lin thereafter filed a Form I-526, Immigrant Petition by Alien Entrepreneur, which has a Priority Date of January 9, 2015.  (No. WAC 15-901-27319). USCIS issued a NOID on December 2, 2017, and Investor Tzu-Yin Lin responded with a submission on January 3, 2018.  On February 3, 2018, defendants issued a final decision denying Investor Tzu-Yin Lin's Form I-526 Petition.

18.     Plaintiff Yung-Ching Lin, a citizen of and resident of Taiwan in the Republic of China, transferred approximately $500,000 into the NFTC, LP Escrow Account through multiple wires.  Investor Yu-Ching Lin thereafter filed a Form I-526, Immigrant Petition by Alien Entrepreneur, which has a Priority Date of May 8, 2015.  (No. WAC 15-903-24560). USCIS issued a NOID on December 2, 2017, and Investor Yung-Ching Lin responded with a submission on January 3, 2018.  On February 3, 2018, defendants issued a final decision denying Investor Yung-Ching Lin's Form I-526 Petition.

19.     Plaintiff Yu-Shun Lin, a citizen of and resident of Taiwan in the Republic of China, transferred approximately $500,000 into the NFTC, LP Escrow Account on or about July 8, 2014.  Investor Yu-Shun Lin thereafter filed a Form I-526, Immigrant Petition by Alien Entrepreneur, which has a Priority Date of August 4, 2014.  (No. WAC 14-903-91105). USCIS issued a NOID on December 2, 2017, and Investor Yu-Shun Lin responded with a submission on January 3, 2018.  On February 3, 2018, defendants issued a final decision denying Investor Yu-Shun Lin's Form I-526 Petition.

20.     Plaintiff Chi-Yu Liu, a citizen of and resident of Taiwan in the Republic of China, transferred approximately $500,000 into the NFTC, LP Escrow Account on or about April 29, 2014.  Investor Chi-Yu Liu thereafter filed a Form I-526, Immigrant Petition by Alien Entrepreneur, which has a Priority Date of May 22, 2014.  (No. WAC 14-903-03436).  Defendant IPO issued a Request for Evidence on August 3, 2016, and Investor Liu submitted a response on October 25, 2016.  USCIS issued a NOID on December 1, 2017, and Investor Liu responded with a submission on January 3, 2018.  On February 3, 2018, defendants issued a final decision denying Investor Liu's Form I-526 Petition.

21.     Plaintiff Tuo-Jung Tseng, a citizen of Taiwan, Republic of China and resident of Beijing in the People's Republic of China, transferred approximately $500,000 into the NFTC, LP Escrow Account on or about April 29, 2015.  Investor Tseng thereafter filed a Form I-526, Immigrant Petition by Alien Entrepreneur, which has a Priority Date of May 26, 2015. (No. WAC 15-903-59962).  Defendant IPO issued a Request for Evidence on August 3, 2016, and Investor Tseng submitted a response on October 25, 2016.  USCIS issued a NOID on December 1, 2017, and Investor Tseng responded with a submission on January 3, 2018.  On February 3, 2018, defendants issued a final decision denying Investor Tseng's Form I-526 Petition.

22.     Plaintiff Yu-Chi Wu, a citizen of and resident of Taiwan in the Republic of China, transferred approximately $500,000 into the NFTC, LP Escrow Account on or about May 14, 2014.  Investor Wu thereafter filed a Form I-526, Immigrant Petition by Alien Entrepreneur, which has a Priority Date of June 18, 2014  (No. WAC 14-903-37303).  USCIS issued a NOID on December 1, 2017, and Investor Wu responded with a submission on January 3, 2018.  On February 3, 2018, defendants issued a final decision denying Investor Wu's Form I-526 Petition.

23.     Plaintiff Wen-Guh Yang, a citizen of and resident of Taiwan in the Republic of China, transferred approximately $500,000 into the NFTC, LP Escrow Account on or about May 13, 2014.  Investor Yang thereafter filed a Form I-526, Immigrant Petition by Alien Entrepreneur, which has a Priority Date of June 17, 2014.  (No. WAC 14-903-39893). Defendant IPO issued a Request for Evidence on July 29, 2016, and Investor Yang submitted a response on October 26, 2016.  USCIS issued a NOID on November 30, 2017, and Investor Yang responded with a submission on January 3, 2018.  On February 3, 2018, defendants issued a final decision denying Investor Yang's Form I-526 Petition.

B.     <u>Defendants</u>

24.     The U.S. Department of Homeland Security ("DHS") is the federal agency bearing responsibility for administration and enforcement of the nation's immigration laws.

25.     Defendant Kirstjen Nielsen, is sued in her official capacity as DHS Secretary in which she is charged with the just administration and enforcement of the immigration laws.  8 U.S.C. § 1103(a).

26.     U.S. Citizenship and Immigration Services ("USCIS"), a component of the U.S. Department of Homeland Security, is responsible for awarding visa petitions in appropriate circumstances consistent with the INA.  As used below, "USCIS" refers to both the U.S. Citizenship and Immigration Services, and predecessor agency U.S. Immigration and Naturalization Services.

27.     Defendant L. Francis Cissna sued in his official capacity as Director of USCIS.

28.     Defendant Nicholas Colucci is sued in his official capacity as USCIS Chief of the Immigrant Investor Program Office.

## IV.     FACTS

A.      The EB-5 Program's Legal Framework

*The Statutory Framework*

29.     Plaintiffs seek eligibility for immigrant visas under the fifth employment-based preference category ("EB-5") of the Immigration Act of 1990.  *See* Pub. L. No. 101-649, §121(a) (Nov. 29, 1990) (codified at 8 U.S.C. § 1153(b)(5)) (hereinafter the "Act").  The purpose of the law is to expand economic opportunity by permitting alien entrepreneurs to invest in U.S. commercial enterprises and create job opportunities for American workers.

30.     There are three statutory requirements:  (1) a foreign national must invest a qualifying capital contribution of either $1,000,000 (or $500,000 if in an underserved area) in a new commercial enterprise; (2) that will employ a minimum of ten U.S. workers; and (3) for an investment made after November 29, 1990:

> (A)  Visas shall be made available . . . to qualified immigrants seeking to enter the United States for the purpose of engaging in a new commercial enterprise (including a limited partnership)—
>
> (i)  in which such alien has invested (after the date of the enactment of the Immigration Act of 1990 [enacted Nov. 29, 1990]) or, is actively in the process of investing, capital in an amount not less than the amount specified in subparagraph (C),[1] and
>
> (ii)  which will benefit the United States economy and create full-time employment for not fewer than 10 United States citizens or aliens lawfully admitted for permanent residence or other immigrants lawfully authorized to be employed in the United States (other than the immigrant and the immigrant's spouse, sons, or daughters).  8 U.S.C. § 1153(b)(5).

31.     In 1992, Congress expanded the program by introducing a regional center

---

[1] While Congress established a minimum capital investment of $1,000,000, foreign investors are authorized to make a $500,000 investment in a targeted employment area, defined as a "rural area or an area which has experienced high unemployment (of at least 150 percent of the national average rate."  8 U.S.C. § 1153(b)(5)(C); 8 C.F.R. § 204.6(f).

concept.  *See* Dep't of Commerce, Justice, and State, the Judiciary, and Related Agencies

Appropriations Act, P.L. 102-395 § 610 (Oct. 6, 1992).  This program encourages investors to

invest in commercial enterprises located within certain, designated "regional centers" and

permits these regional centers to pool investments from multiple investors.  *See* 8 U.S.C §

1153 *note*.  The program further allows the alien entrepreneur to satisfy the job creation

requirement by counting not only the jobs directly created by the investment, but also those

that are indirectly created by its effect (as determined by "reasonable methodologies"), such as

the investment's revenues from "improved regional productivity, job creation, or increased

domestic capital investment resulting from the program." *Id.*

32.     A foreign investor bears the burden of proof in establishing eligibility under the

Act, and applies for an EB-5 visa by submitting a Form I-526, Immigrant Petition by Alien

Entrepreneur to the U.S. Citizenship and Immigration Services.  8 C.F.R. §§ 204.6(a), (c).

33.     If USCIS approves the Form I-526 by issuing a Form I-797 Notice of Action,

conditional resident status is provisionally granted (subject to satisfying further consular entry

requirements of the Department of State).

34.     If the alien entrepreneur is admitted into the United States as a conditional

permanent resident, the alien entrepreneur may petition two years later (by filing a Form I-

829) to remove the conditionality of their permanent resident status by demonstrating full

compliance with the visa requirements – i.e. the investment and job creation requirement.  8

U.S.C. § 1186b; 8 C.F.R. § 216.6.

35.     The Form I-526 petition is submitted to the IPO, which resides Washington,

D.C.

*The Regulatory & Policy Framework*

36.     The following regulatory and policy framework applies in the evaluation of a

Form I-526 petition: the Act's implementing regulations at 8 C.F.R. § 204.6 originally

published in 1991, four decisions from the Board of Immigration Review from 1998

designated as precedents, a 2013 policy memorandum, and effective November 30, 2016, a

new USCIS Policy Manual.  *See* Volume 6:  Immigrants, Part G, Investors (hereinafter "6

USCIS-PM-G").

37.     In 1991, USCIS' predecessor agency, the former Immigration and

Nationalization Service ("INS") published regulations to guide the procedures and substance

for alien entrepreneurs seeking eligibility under the EB-5 statute and its implementing

regulations.  *See* 56 Fed. Reg. 60,897; 60,910-13 (INS) (Nov. 29, 1991) (codified at 8 C.F.R.

§ 204.6).  Consistent with the EB-5 statute, an alien must demonstrate that they have invested,

or are actively investing, lawfully obtained capital in a new commercial enterprise[2] in the

United States that will create at least ten full-time jobs for American workers.  *See* 8 C.F.R. §§

204.6(j)(1)-(6).

38.     DHS defines "invest" in 8 C.F.R. Section 204.6(e) as:

Invest means to contribute capital. A contribution of capital in exchange for a note,
bond, convertible debt, obligation, or any other debt arrangement between the alien
entrepreneur and the new commercial enterprise does not constitute a contribution of
capital for the purposes of this part.

39.     DHS interprets the Act's capital contribution requirement in 8 C.F.R. §

204.6(j)(2) to require that that an investment be placed at risk for the purpose of generating a

return:

To show that the petitioner has invested or is actively in the process of investing the
required amount of capital, the petition must be accompanied by evidence that the
petitioner has placed the required amount of capital at risk for the purpose of
generating a return on the capital placed at risk. Evidence of mere intent to invest, or
of prospective investment arrangements entailing no present commitment, will not

---

[2] The I-526 petition may be supported by an investment into a wholly new enterprise, the
expansion of an existing business, or a troubled business.  *See* 8 C.F.R. § 204.6(h);

suffice to show that the petitioner is actively in the process of investing. The alien must show actual commitment of the required amount of capital. Such evidence may include, but need not be limited to:

> (i)     Bank statement(s) showing amount(s) deposited in United States business account(s) for the enterprise; . . .

> (iv)    Evidence of monies transferred or committed to be transferred to the new commercial enterprise in exchange for shares of stock (voting or nonvoting, common or preferred). Such stock may not include terms requiring the new commercial enterprise to redeem it at the holder's request; or . . .

40.     Capital acquired, directly or indirectly through unlawful means is not permissible.  8 C.F.R. § 204.6(e).  To demonstrate that the "petitioner has invested, or is actively in the process of investing, capital obtained through lawful means" the petitioner must submit, as applicable, the following documentation:

(i)      Foreign business registration records;

(ii)     Corporate, partnership (or any other entity in any form which has filed in any country or subdivision thereof any return described in this subpart), and personal tax returns including income, franchise, property (whether real, personal, or intangible), or any other tax returns of any kind filed within five years, with any taxing jurisdiction in or outside the United States by or on behalf of the petitioner;

(iii)    Evidence identifying any other source(s) of capital; or

(iv)     Certified copies of any judgments or evidence of all pending governmental civil or criminal actions, governmental administrative proceedings, and any private civil actions (pending or otherwise) involving monetary judgments against the petitioner from any court in or outside the United States within the past fifteen years.

41.     Since the passage of the Act more than twenty-five years ago, INS and later USCIS have issued precedential opinions, public statements and other internal guidance and training materials regarding its interpretation of the Act and 8 C.F.R. § 204.6.[3]

---

[3] *See, e.g.,* INS Office of the General Counsel Memo, "Alien Entrepreneurs under Section 203(b)(5) of the Immigration and Nationality Act" (Sep. 10, 1993); INS Memo, "EB-5

42.     In 1998, to provide additional guidance on its own implementing regulations at

8 C.F.R. § 204.6, INS designated four decisions as "precedential decisions," which are

binding on all Service employees in the administration of the Act.  *See*, *Matter of Izummi*, 22

I. & N. Dec. 169 (Assoc. Comm. 1998); *Matter of Soffici*, 22 I. & N. Dec. 158 (Assoc. Comm.

1998); *Matter of Ho*, 22 I. & N. Dec. 206 (Assoc. Comm. 1998); *Matter of Hsiung*, 22 I. & N.

Dec. 201 (Assoc. Comm. 1998).

43.     On May 13, 2013, the USCIS released consolidated policy guidance, an

expansive, twenty-seven page memorandum.  *See* USCIS Policy Memorandum, No. P.M.-

602-0082, EB-5 Adjudications Policy, at pg. 27 (May 30, 2013) (hereinafter "EB-5 Policy

Memo").  This EB-5 Policy Memo affirms prior policy guidance "to the extent that it does not

conflict," [at page 1], but also cautions that "is intended solely for the training and guidance of

USCIS personnel in performing their duties relative to the adjudication of applications and

petitions [which] . . . may not be relied upon . . . in litigation with the United States, or in any

other form or manner."

44.     On November 30, 2016, the Agency once again consolidated its guidance

concerning the EB-5 Investor Program in a USCIS Policy Manual, which, at Part 6, of

Volume 6, contains fifty-six pages of additional guidance.  *See* 6 USCIS-PM G, *available at*

*https://www.uscis.gov/policymanual/HTML/PolicyManual-Volume6-PartG.html.*

---

Investor," (Oct. 20, 1997) (released under the Freedom of Information Act to the American
Immigration Lawyers Association ("AILA") (hereinafter the "1997 Policy Memo"); 2011
USCIS EB-5 Training Materials (through May 2011 (released under the Freedom of
Information Act to AILA) (hereinafter the "2011 Training Materials"); USCIS 2013 EB-5
Training PowerPoint Presentation (2013) (released under the Freedom of Information Act to
AILA) (hereinafter the "2013 Training Materials"); and USCIS Policy Manual, Volume 6,
Part G (Nov. 30, 2016) (hereinafter the "2016 Policy Manual").

B.     Agency Final Adjudications

45.     Each plaintiff, as a limited partner of NFTC, LP, invested the $500,000

qualifying capital investment into a new commercial area in underserved area and filed a

Form I-526 with a supporting memorandum of law and exhibits to demonstrate, through a

preponderance of the evidence, eligibility under INA § 203(b)(5).  8 U.S.C. § 1153(b)(5).

46.     The consolidated administrative record for these petitioners establishes that the

Towne Club-St. Augustine, as the new commercial enterprise, projects the creation of more

than 260 full-time jobs in the development, construction, and operation of the senior living

community.  Total project costs are expected to be $31.3 million, a portion of which

comprises the direct, qualifying capital contributions of these petitioner-investors.

47.     On February 3, 2018, defendants issued identical decisions to plaintiffs

denying their Form I-526 Petitions concluding that the plaintiffs had not shown, by a

preponderance of the evidence, that a qualifying investment as defined at 8 C.F.R. 204.6(e)

had been made.  Decision at pg. 5.  Defendants concluded that provisions in the offering

documents and partnership agreement contained in the administrative record rendered each

investment a "prohibited debt arrangement" because the "General Partner maintains an option

to redeem Petitioner's equity units, after 5 years or the approval of the Form I-829."  *Id.*

C.     Permissibility of a General Partner's Buy Option under 8 C.F.R. § 204.6

48.     On February 7, 2018, a court in this district considered whether defendants

"acted in an arbitrary and capricious manner when it declared plaintiffs ineligible for visas

because their investments came with a "call option," which gave the company in which they

invested the choice to buy plaintiffs out."  *Chiayu Chang*, 2018 U.S. Dist. LEXIS 19912, *2.

The court determined, *inter alia*, that the call option at issue did not provide the investors with

any right to repayment, and held that USCIS' decision was arbitrary and capricious.  *Id.*

49.     In March 2017, another court in this district considered the same question on functionally identical facts, and again, held that the "[c]all option does not provide the Plaintiffs in this case with any rights . . . no guarantees were made . . . that their capital would be returned regardless of the success or failure of the business." *Doe*, 239 F. Supp. 3d at 307. The court explained further that the call option at issue gave the "general partner the right to repurchase the Plaintiffs' interests if the business was successful, but *that right did not limit the substantial risk that Plaintiffs' investment could be wholly lost if the business was unsuccessful*." *Id.* (emphasis added).

50.     As courts in this district have held in interpreting 8 C.F.R § 204.6(e) and *Matter of Izummi*, "[a] call option alone does not a debt arrangement make. . . [t]he call option in *Doe*, like the one here [*Chiayu Chang*], was owned by the partnership, and came with no guarantee that the partnership would exercise it." *Chiayu Chang*, 2018 U.S. Dist. LEXIS 19912, *22-23.

51.     The NFTC, LP call option, as substantially supported by the evidence in the administrative record and functionally identical to the call options in *Doe* and *Chiayu Chang*, was owned by the partnership, came with no guarantee that the partnership would exercise it, and did not limit the substantial risk that plaintiffs' investment could be wholly lost if the business was unsuccessful.

52.     The administrative record in this civil action similarly evidences that the General Partner *exclusively* held the call option to buy the shares of the limited partner investors and that the limited partners possessed no sell option or guaranteed return:

a.     "After Removal of Condition (I-829), the general partner maintains its option to redeem their $500,000 investment by the General Partner by paying $500,000 plus accrued returns (.5% of the capital invested per annum) to each LP.  This is an option available to the

General Partner and is not enforceable by the Limited Partners (otherwise they would not be deemed at risk as required by EB-5 Regulations).  The option of redemption must occur within 30 days after said 5 years, or the approval of the I-829, whichever is later." Confidential Offering Memorandum at pg. 9.

b.      "The Partnership (but NOT the investors) shall have the option to redeem by transfer all of the outstanding Class A Units to the General Partner after the fifth anniversary of each Limited Partner making his/her investment or as soon as prudently possible thereafter taking into account the business needs of the Partnership."  Limited Partnership Agreement at Article 15.1(a).

53.      These documents in the administrative record expressed an aspiration, but not a guarantee, of a return of capital and a return on investment, and described the possible means of effectuation:

a.      "[T]he business plan of the project owner contemplates selling the project upon achieving stabilization which is projected to take less than 5 years."  *Id.*

b.      "The Partnership will use its best efforts to redeem Class A Units."  Limited Partnership Agreement at Article 15.1(a).

c.      Cash flow, cash availability, and debt availability "*may* suffice to repay all the Limited Partners," but otherwise, the General Partner "*can* propose a sale to the project owner or decide upon other steps," which "*could*" include restructuring the assets of the enterprise. Confidential Offering Memorandum at pg. 13 (emphasis added).

54.      The administrative record does not support a finding that the investors have a guarantee of repayment of their $500,000 capital investment plus interest at a predetermined price and at a predetermined time or a debt arrangement.  *See* Decision at pg. 7.

55.      The investors were informed that their $500,000 capital investment was at full

risk of loss:

> The financing of the Project will involve a high degree of debt and corresponding levels of debt service.  The total cost of the Project, including soft costs, will be approximately $42,000,000, of which approximately $32 million is debt.  These lenders will have priority over the equity investors in their claims on the cash flows from the Project.  If interest rates increase from today's historically low levels, the cost to service or refinance such indebtedness will increase.  If expected cash flows are not sufficient to satisfy debt service requirements or if the debt cannot be paid or refinanced when it comes due, there will be no cash available for distribution to investors in the Project and **the lender could foreclose on the Project.  Default under the debt instruments or a foreclosure by lenders could result in a complete loss of investment.**

> <u>Possible Loss of Entire Investment.</u>

> The Limited Partners of the LP should be aware that if the LP is not successful in its business, their entire investment in the LP may become worthless.  There is a risk of delay in realizing any return of or on the investment for which risks Investors will be required to represent that they have received advice and counsel from financial, tax, business, securities and/or other advisors, and not from the General Partner the Developer, or Lender to the Developer.

Confidential Offering Memorandum at pg. 13 (emphasis added); *see also* Subscription

Agreement at ¶ 11 ("I understand the risk of loss of some or all of my investment in my

Limited Partnership Interest in the Company and the risk of delay in realizing any return of or

on my investment.").

56.     Similar to *Doe* and *Chiayu Chang*, the administrative record here contains no

evidence of a guarantee made to plaintiffs that their capital would be returned to them

regardless of the success or failure of the business.  *Doe*, 239 F. Supp. 2d at 307 ("[t]he Call

Option gave [the] general partner the right to repurchase the Plaintiffs' interests if the business

was successful, but *that right did not limit the substantial risk that Plaintiffs' investment could

be wholly lost if the business was unsuccessful*"); *Chiayu Chang*, 2018 U.S. Dist. Lexis 19912,

*18 ("it is the company that benefits from both sides of the agreement:  it has both the money

and the right to return the money if it would prefer to have the investor's partnership interest

back").

57.     The administrative record also contains an Acknowledgement of No

Guaranteed Return of Capital and Escrow Terms, signed in December 2017, by each investor

plaintiff.  Defendants' decisions denying plaintiffs' Form I-526 Petitions did not reference or

consider these Acknowledgements as evidence.  These Acknowledgements provided:

> I would like to confirm my legal understanding of documents and the terms of this investment and further confirm that my understanding of the nature of these documents has never changed. To be clear, there is absolutely no guaranteed return of capital, I am aware my investment is – and must remain – fully at risk (in accordance with the terms of the Escrow Agreement, as applicable) and I cannot withdraw any of my EB-5 investment unless my case is denied.

> I am aware that EB-5 investments must be considered "at risk" and the return of the investment principal, by law, cannot be guaranteed. This was explained to me before I invested in the Project and it has always been my understanding. Further, none of the documents I signed include any guarantee or redemption arrangement whatsoever. . .

> I, of course, understand the EB-5 investments must remain fully invested and completely at risk until an investor removes conditions to permanent residence. In this case, the five year timeline discussed was explained to me as the period in which my investment would be "locked up" due to the timing and rules of the EB-5 program. Specifically, this would be about two years for I-526 approval and admission to the U.S. as a conditional permanent resident; two years as a conditional permanent resident; and, one year for adjudication of the I-829 petition (for a total of five years). Of course, this timeline turned out to be incorrect as USCIS has not adjudicated these cases for far longer than what we would have expected at the outset. But again, there is nothing binding about the informal timeline described in the partnership agreement.

> Certainly, I confirm this is not a guarantee; it is just a description a generalized timeline as well as an informal listing of certain rights or remedies that *might* be available to Limited Partners in the future (and once appropriate under EB-5 law and Program requirements). I understand that timeline is an estimate and it could vary. I have always understood that the loss of my investment principal is possible.

> As a Limited Partner, I am a member of a Limited Partnership that would own a Senior Living business and the real estate.  It seems logical that at some point in the future, the Partnership can sell the business and/or real estate.  It would seem abnormal for USCIS to say that we can never sell the business or real estate.  But the possibility to sell at some point is not a guarantee at all.  No one can know the future value and anything is possible – we may lose money, we may make money.  This is the point of at risk.  We take a risk and hopefully we can earn profit, but there is not guarantee.  I understand this fact and accept it. . .

> This letter confirms my understanding of the "at risk" requirement for EB-5 investments. My investment in NFTC, LP has never been guaranteed. I understand and agree that there is no pre-arranged redemption or any return of capital guaranteed by NFTC, LP and further that the terms of the Escrow Agreement do not permit me to unilaterally withdraw capital (and furthermore, that any such attempt to withdraw from the Partnership would obviously terminate my continued eligibility for participation in the EB-5 Program).

58.     Defendants' conclusion in the denials that provisions in the offering documents and in the partnership agreements in the administrative record rendered each investment a "prohibited debt arrangement" because the "General Partner maintains an option to redeem Petitioner's equity units, after 5 years or the approval of the Form I-829" [Decisions at pg. 5] is plainly arbitrary and capricious, not supported by the evidence, beyond the scope of statutory authority, and inconsistent with judicial interpretations of 8 C.F.R. § 204.6 in this district.

## V.     EXHAUSTION & INJURY

59.     The INA directs that "[i]n general Visas shall be made available" to qualifying EB-5 petitioners," thus, the decision to issue a visa under the Immigrant Investor Program is not discretionary.  8 U.S.C. § 1153(b)(5)(A) (emphasis added).

60.     The APA provides that "an [a]n agency action made reviewable by statute and [a] final agency action for which there is no other adequate remedy in court are subject to judicial review." 5 U.S.C. § 704. "Agency action' includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13).

61.     Defendants' wrongful denial of plaintiffs' Form I-526 Petitions has caused, and will continue to cause, personal harm to plaintiffs.

62.     Defendants' wrongful denial of plaintiffs' Form I-526 Petitions has caused, and

will continue to cause, an actual disruption of the economic relationship between the plaintiffs and the senior living project.

## VI.    CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION

*DEPRIVATION AND VIOLATION OF RIGHTS UNDER THE APA*

63.    Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs above, inclusive.

64.    Defendants' denials of plaintiffs' Form I-526 Petitions are improper and reviewable under 5 U.S.C. § 702.

65.    As a result of these improper decisions by defendants, plaintiffs are "suffering a legal wrong of agency action," are "adversely affected or aggrieved by agency action," and therefore are "entitled to judicial review thereof" under 5 U.S.C. § 702.

66.    Defendants' decision to deny plaintiff's visa petitions are based upon legal interpretations and factual findings contrary to, and inconsistent with, INA § 203(b)(5), 8 C.F.R. § 204.6, the four EB-5 precedent decisions, and the applicable policy memoranda.

67.    The APA directs that the "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" [5 U.S.C. § 706(2)(A)]; "in excess of statutory . . . authorities" [§ 706(2)(C)]; and "unsupported by substantial evidence" [§ 706(2)(E)].

68.    Defendants' actions, findings, and conclusions are arbitrary, capricious, an abuse of discretion, not supported by substantial evidence, and in excess of statutory authority under 5 U.S.C § 706 as follows:

a.    In violating 5 U.S.C. §§ 706(2)(A), (C)-(E), defendants erroneously conclude

that plaintiffs had failed to establish eligibility for the benefit sought under INA § 203(b)(5), 8

C.F.R. § 204.6, and the four EB-5 precedent decisions;

      b.      In violating 5 U.S.C. §§ 706(2)(A), (C)-(E), defendants erroneously determined

that plaintiffs failed to demonstrate through a preponderance of the evidence a qualifying

investment as defined in 8 C.F.R. § 204.6(e);

      c.      In violating 5 U.S.C. §§ 706(2)(A), (C)-(E), defendants applied a legal standard

under 8 C.F.R. § 204.6(e) and an interpretation of the precedential decision, *Matter of Izummi*,

that failed to be subject to public notice and comment, which is in excess of statutory and

regulatory authority, *ultra vires,* and void [*See e.g, Doe* and *Chiayu Chang*];

      d.      In violating 5 U.S.C. §§ 706(2)(A), (C)-(E), defendants erroneously determined

that the General Partner's option to redeem plaintiffs' equity units, after 5 years or the approval

of the I-829, renders the investment a prohibited debt arrangement under 8 C.F.R. § 204.6(e)

and *Matter of Izummi* [*See Doe* and *Chiayu Chang*];

      e.      In violating 5 U.S.C. §§ 706(2)(A), (C)-(E), defendants erroneously determined

that the plaintiffs entered into the partnership knowing, under an unconditional "promise," that

after a certain time the General Partner would pay, or would be obligated to pay, $500,000 and

any accumulated priority returns of 1% per annum for their Class A Shares; and

      e.      In sum, defendants' actions, findings, and conclusions that plaintiffs

insufficiently demonstrated eligibility under INA § 203(b)(5) and 8 C.F.R. §§ 204.6(e) and

(j)(2) with a qualifying contribution of capital is "arbitrary, capricious, and abuse of discretion,

[and not] otherwise in accordance with law; . . . in excess of statutory jurisdiction, authority, or

limitations, or short of statutory right; without observance of procedure required by law; [and]

unsupported by substantial evidence" contrary to INA § 203(b)(5) and 8 C.F.R. § 204.6.

## SECOND CAUSE OF ACTION

*DEPRIVATION AND VIOLATION OF RIGHTS UNDER THE INA*

69.     Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs above, inclusive.

70.     In denying plaintiffs' Form I-526 Petitions, defendants have unlawfully interpreted and applied INA § 203(b)(5), 8 C.F.R. § 204.6, its four EB-5 precedent decisions, and policy memoranda.

71.     As a result, defendants deprived plaintiffs their rights under the INA to benefit from the statute's immigrant investor provisions, and thereby violated those rights.

## THIRD CAUSE OF ACTION

*DECLARATORY JUDGMENT ACT*

72.     Plaintiffs repeat and reallege the allegations contained in the proceedings paragraphs above, inclusive.

73.     Plaintiffs are entitled to a declaration of rights, namely, eligibility to classification under INA § 203(b)(5) and 8 C.F.R. § 204.6 as conditional permanent residents, which shall have the force and effect of a final judgment, in accordance with 28 U.S.C. § 2201(a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs hereby pray for relief as follows:

a.     That the Court hold unlawful and set aside defendants' findings that plaintiffs failed to establish eligibility under INA § 203(b)(5);

b.     That the Court declare that defendants' final actions denying plaintiffs' Form I-526 Petitions are arbitrary and capricious, not supported by substantial evidence, and beyond

the scope of defendants' statutory authority;

  c. That the Court either grant independently or remand and direct defendants to grant plaintiffs' eligibility to alien entrepreneur classification under INA § 203(b)(5);

  d. That the Court provide further relief as it deems appropriate, just, and equitable; and

  e. That the Court grant reasonable attorney's fees, expenses and costs of court to plaintiffs, pursuant to the Equal Access to Justice Act, 5 U.S.C. § 504, or any other applicable provision, to include 28 U.S.C. 2412(d).

DATED: March 22, 2018
   New York, New York

       Respectfully submitted,


       //s// *Jason D. Wright*
       Jason D. Wright, Esq.
       DC Bar #1029983
       Wright Law Firm, PLLC
       40 Fulton Street, 23rd Floor
       New York, New York 10038
       Direct:  212-683-4892
       Mobile:  202-578-0260
       Fax:  917-677-8577
       E-mail: jwright@jasonwrightesq.com

       *Counsel for Plaintiffs*